NICHOLAS RAGETH, Appellant, v. JOHN BOLINGER,
Administrator, Appellee.

Contracts: MERGER. The oral agreement of a decedent to convey cer-
tain land in consideration of services rendered is merged in and
satisfied by a subsequent conveyance of his land to claimant, even
though the grantee paid full consideration under the written con-
tract.

*Appeal from Harrison District Court.*—HON. O. D. WHEELER,
Judge.

SATURDAY, DECEMBER 14, 1912.

THIS is a claim against the estate of a decedent for labor
and service under an alleged agreement for compensation,
"to consist of not less than forty acres of land in Harrison
county." At the close of plaintiff's evidence the trial court
directed a verdict for the defendant. Plaintiff appeals.—
*Affirmed.*

*C. W. Kellogg,* for appellant.

*Tinley & Mitchell,* for appellee.

EVANS, J.—The plaintiff was the stepson of the decedent,
Jacob Rohner. He was ten years old at the time of his
mother's marriage to the decedent in April, 1883. He came
into the family with his mother, and so continued until he
had attained his majority. His claim as filed with the admin-
istrator was stated as follows: "That during the time from
April, 1883, to the spring of 1894, the deceased, in his life-
time, became indebted to claimant as follows: That claimant

worked for deceased on his farm in Harrison county during those years, and received nothing for his services. That the deceased promised orally to reimburse claimant by leaving him part of his estate at the time of his decease, the said estate to be left to consist of not less than forty acres of land in Harrison county. That the deceased died in September, 1909, without having provided for claimant as above agreed. That there is due claimant from the said estate $4,000, or the equivalent of forty acres of land, with interest thereon at 6 per cent per annum from the 4th day of September.''

The plaintiff became of age in 1894. The decedent was a farmer, and had three forty-acre tracts of land in Harrison county, situated, respectively, in certain sections 3, 4, and 33. The tracts in sections 4 and 33 were contiguous. The other tract was separated from these two. One of the tracts was acquired since the plaintiff became a member of decedent's family; the other two being owned by decedent prior to such time. The record does not disclose which tract was last acquired. The following is the substance of the testimony introduced by plaintiff in support of his claim:

Frank Boehler testified: ''Well, we got to talking about the farm, and about his leaving the farm. He said he sold it to his stepson. Through the conversation I asked him what wages he ever paid to his stepson before he sold him the farm. He says: 'He never had any stipulated wages. I never paid him wages.' He said he never paid him wages, for he was to give him some land, either whenever he died or not. I can't remember now the very words he said; that is the saying of them. That is the substance of it. He said: 'I wish that boy would get married, so I could make a will; but I won't make no will so long as he ain't married, as long as he ain't got any children, for I don't want any of the property to go over to his folks. Whenever he has got a wife and children, I will know what I have got to do then.' He said: 'I told Nick I would give him forty acres of land, the forty lying upon the hill.' ''

Wohlers testified: "A. When I seen Mr. Rohner down town, he told me that Nick—he was there the day before in his house—and he told me that Nick he had been pretty good on the farm, and he wouldn't beat him, and that he was going to do what was right, and Nick he knows about what he gets. What he got out of him was for his mother."

Mrs. Wohlers testified: "Well, he said that people had told him that he did not have to give Nick anything, and he said he went to several reliable parties, and they said he did not have to give Nick anything; but he said he was going to do what was right by Nick, and he wouldn't beat him out of anything for the sake of his mother."

It is manifest from the foregoing that the evidence on behalf of the plaintiff was very slender indeed. Statements attributed to the decedent are quite consistent with the absence of obligation on his part, and yet with the desire and intent to do something voluntarily. If it can be said that the evidence was sufficient to go to the jury in support of a binding promise, it was a promise to give to him forty acres of his land. The importance of this conclusion appears from other features of the evidence not quoted above. In 1899 the plaintiff and the decedent entered into a written contract whereby the decedent agreed to convey to the plaintiff *all* his land, consisting of the three forty-acre tracts, and whereby the plaintiff agreed to pay the decedent in installments on long time the sum of $3,200. Later in 1906 the decedent executed to the plaintiff a warranty deed of all such land, and the plaintiff executed to the decedent a note and mortgage of $2,165. Other notes appear also to have been executed, which are not further explained in the record. The decedent died in 1909. It is manifest that, if there was an oral agreement or understanding between plaintiff and decedent prior to 1899, it was necessarily merged in the written contract, which included the very subject-matter of the alleged oral contract.

It is urged on behalf of the plaintiff that there was no

breach of the oral contract until the death of the decedent, and that the breach occurred by the failure to make provision for plaintiff by will. It is also urged that the execution of the written contract and conveyance did not terminate the obligation of the decedent to render compensation to plaintiff for his services during his minority. It is also urged that the decedent recognized his oral obligation as continuing notwithstanding the written contract, and that some of the alleged admissions above quoted occurred after the execution of the written contract. We do not think the testimony will fairly bear this argument. The decedent may have intended to do more for the plaintiff than he did. But there is nothing in the conversations quoted to indicate that he had bound himself to do so. If the evidence was sufficient to show a promise to convey forty acres of land in compensation for the work, such promise was literally fulfilled by the conveyance subsequently made. It was none the less fulfilled because other transactions between the same parties were added to it. If the oral contract was binding, the subsequent written contract was clearly so.

It is urged in argument by appellant that the plaintiff paid full value under the written contract. It does not appear from the record whether this be so or not. If it were so, it would hardly aid the plaintiff. If the oral contract was originally binding upon the decedent, the subsequent written contract was thereafter equally binding upon the plaintiff. The appellant urges that his claim is not for forty acres of land, but for compensation for his work, and that the evidence shows that the decedent intended to compensate him. But, if plaintiff's evidence proves anything, it proves that the form of compensation was specified. From the nature of the case it could not have been ignored or lost sight of when the parties entered into the written contract. If the oral contract was sufficient to confer upon the plaintiff an equitable interest in any part of the decedent's land, then the conveyance to plaintiff by decedent by warranty deed of all his land

was a merger of estates. This legal proposition is not disputed. See *Archer v. Jacobs,* 125 Iowa, 468; *James v. Newman,* 147 Iowa, 574. The decedent could never thereafter convey to him any greater interest in any of such land than was conveyed to him by the warranty deed.

We think the trial court properly directed the verdict, and such order is accordingly *Affirmed.*